NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Z. MARCIA ABRAMSON, Executrix of The ESTATE OF MARTIN ABRAMSON Deceased and Z. MARCIA ABRAMSON In her own right, : <br><br> Plaintiffs, : <br> v. <br> : <br> THE RITZ-CARLTON HOTEL COMPANY, LLC t/a, d/b/a and a/k/a : <br> THE RITZ-CARLTON GOLF & SPA RESORT, ROSE HALL, JAMAICA : <br> and <br> MARRIOTT INTERNATIONAL, INC. : <br> and <br> THE RITZ CARLTON GOLF & SPA : <br> RESORT, ROSE HALL, JAMAICA <br> and : <br> AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC., : <br> and <br> JOHN DOES 1 through 20, : <br><br> Defendants. : | **Hon. Joseph H. Rodriguez** <br><br> **Civil Action No. 09-3264** <br><br> **OPINION** |

**RODRIGUEZ, J.**

Presently before the Court is a motion filed by Defendant American Express Travel Related Services, Inc. to dismiss all claims against it pursuant to Fed. R. Civ. P. 12(b)(6). [Dkt. Entry No. 39]. The Court has considered the written submissions of the parties and heard oral argument on the motion on September 20, 2010. For the reasons set forth below, Defendant's motion will be granted.

**I.     Factual & Procedural Background**

For the purpose of deciding this Motion to Dismiss, the facts alleged by the Plaintiff, Z. Marcia Abramson, in her Second Amended Complaint and all reasonable

inferences are accepted as true.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  Prior to June 7, 2007, Plaintiff and her husband Martin Abramson, residents and citizens of New Jersey, contacted Defendant, American Express Travel Related Services, Inc. (Amex), a travel agency with offices in Cherry Hill, New Jersey with the purpose of planning a family trip. (Second Am. Compl. at ¶¶ 1, 8, 16.)  During discussions with an Amex representative, the Ambramsons requested a hotel facility that provided "state of the art medical services and equipment." (Id. at ¶ 17.)  Amex assured and represented to the Abramsons that the Ritz Carlton Golf & Spa Resort, Rose Hall, Jamaica (hereinafter "Jamaica Ritz") provided all of the necessary state of the art medical services and equipment. (Id. at ¶ 18.)  According to the Second Amended Complaint, "on or about June 7, 2007, [the Abramsons] relied on [Amex]'s representation and were hotel guests at the Jamaica Ritz." (Id. at ¶ 19.)  On June 8, 2007, while eating dinner in the dining room of the restaurant of the Jamaica Ritz, Martin Abramson went into cardiac arrest.  (Id.)  Plaintiff alleges that employees at the Jamaica Ritz failed to respond adequately when assistance was requested. (Id. at ¶ 21.) Hotel employees did not attempt to perform cardio-pulmonary resuscitation (CPR), take other life saving emergency response measures, or promptly contact Emergency Medical Services (EMS) while awaiting instructions from the hotel supervisor.  (Id. at ¶¶ 22, 24.) According to the Plaintiff, when the hotel supervisor arrived on the scene, hotel employees attempted to use an automated external defibrillator on Mr. Abramson. (Id. at ¶¶ 27-28.)  However, the defibilator malfunctioned allegedly because it was not maintained in proper working condition and none of the hotel employees knew how to operate the device.  (Id.)  Approximately forty minutes after Mr. Abramson went into

2

cardiac arrest, EMS arrived and transported him to MoBay Hope Medical Center. (Id. at ¶¶ 29-30.) Mr. Abramson was subsequently transported to Cornwall Regional Hospital in Jamaica, and then airlifted to Jackson Medical Center in Miami, Florida where he was pronounced dead on or about June 11, 2007. (Id. at ¶¶ 30-32.)

Following this incident, on June 5, 2009, Plaintiff filed a lawsuit in New Jersey Superior Court as the executrix of the estate of Martin Abramson and in her own right. Named as defendants in the Complaint were the owners and operators of the Jaimaca Ritz, various to-be-named employees of the hotel, and the travel agent Amex. Defendants removed the New Jersey action to the United States District Court for the District of New Jersey on June 6, 2009 pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. [Dkt. Entry No. 1.] Plaintiff subsequently filed a First Amended Complaint on February 5, 2010 [Dkt. Entry No. 24], and a Second Amended Complaint on March 15, 2010 [Dkt. Entry No. 38], properly identifying and clarifying the ownership and operator entities associated with the Jamaica Ritz.

The Second Amended Complaint alleges in Count Two that Amex was negligent because Mr. Abramson's death was a direct and proximate result of Amex's:

    a) Failure to investigate the condition of the Ritz-Carlton Rose Hall, Jamaica;
    b) Failure to follow up on the Plaintiff's request for a hotel with a state of the art medical facility;
    c) Representation to the Plaintiffs that they were booked at a modern hotel with an appropriate medical facility and services as requested by the Plaintiffs; and
    d) Failure to advise and instruct the Plaintiffs that the Jamaica Ritz did not have adequate medical facilities and/or services onsite.

(Second Am. Compl. at ¶ 41.)[1]

Amex filed the pending Motion to Dismiss the Second Amended Complaint on March 26, 2010, asserting that the complaint fails to allege facts sufficient to establish (1) that Amex owed the Abramsons a duty and/or (2) that Amex breached any duty owed to the Abramsons. Plaintiff filed a Response on April 6, 2010 [Dkt. Entry No. 41].

## II.     Standard on a Motion to Dismiss Under Rule 12(b)(6)

A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[2] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly,

---

[1] Plaintiff's Second Amended Complaint also alleges the following causes of action against all defendants: Negligent Infliction of Emotional Distress (Count Three); Wilful Wanton Conduct - Punitive Damages (Count Four); Survival Action (count Five); Wrongful Death (Count Six); Loss of Consortium (Count Seven). Because these causes of action, as they apply to Amex, are dependent upon the validity of the Negligence cause of action, they are not addressed individually herein.

[2] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

550 U.S. 544, 570 (2007).

"A claim has facial plausibility[3] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. - - - , 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 129 S. Ct. at 1950 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."

---

[3]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

5

Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Analysis

Amex makes two primary arguments in support of its Motion to Dismiss for failure to state a claim under Rule 12(b)(6). First, Amex contends that Plaintiff has not alleged sufficient facts necessary to warrant the imposition of any duty on Amex because the Second Amended Complaint does not explicitly assert that Amex actually booked the hotel accommodations in question. Second, Amex contends that even if it acted as a travel agent for the Abramsons, Plaintiff has not alleged that Amex breached any duty because the Second Amended Complaint fails to set forth any factual allegations indicating that Amex knew that the Jamaica Ritz would respond inappropriately to a medical emergency.

### A. The Duty of a Travel Agent to a Customer

Amex argues that the facts in the complaint fail to allege that Amex owed any duty to the Abramsons. A "prerequisite to recovery on a negligence theory is a duty

6

owed by defendant to plaintiff." Stratchan v. John F. Kennedy Memorial Hosp., 538 A.2d 346, 349 (N.J. 1988). Thus, to state a negligence claim upon which relief can be granted a plaintiff's complaint must be based upon circumstances for which the law imposes a duty of care upon the defendant. See Bradshaw v. Rawlings, 612 F.2d 135, 138 (3d Cir. 1979). In New Jersey, the question of whether a duty exists is a matter of law that requires a consideration of the relationship of the parties. See Jarrah v. Trump Hotels & Casino Resorts, 487 F. Supp. 2d 522, 525 (D.N.J. 2007). A travel agent who arranges vacation plans, rather than acting as merely a "ticket agent" at arm's length, is generally regarded as a special agent of the customer to make requested travel arrangements, "akin to a broker, which engages in a single business transaction with the principal." Josephs v. Fuller, 451 A.2d 203, 205 (N.J. Super. Ct. Law Div. 1982). The pecuniary benefit bestowed upon the travel agent by the customer in exchange for the agent's expertise forms the basis of a legal duty to act as a reasonable travel agent when making the customer's travel arrangements. See Rodriguez v. Cardona Travel Bureau, 523 A.2d 281, 282 (N.J. Super. Law Div. 1986); Josephs, 451 A.2d at 205.

  Amex contends that the Plaintiff's Second Amended Complaint fails to establish that Amex owed any duty to the Abramsoms because the pleading does not allege that Amex actually booked the stay at the Jamaica Ritz or received any resulting compensation. As stated above, it is axiomatic that a travel agent owes no duty to a traveler who has not actually bestowed a pecuniary benefit upon the travel agent in exchange for the travel agent's expertise in booking the traveler's travel accommodations. The Second Amended Complaint does not explicitly state that Amex booked the Abramsons' hotel accommodations in Jamaica. Rather, Plaintiff merely

alleges that the Abramsons "relied on [Amex]'s representation and were hotel guests at the Jamaica Ritz." (Second Am. Complaint at ¶ 19.) The Second Amended Complaint further states that Amex's negligence is established by its representation to the Abramsons "that they were booked at a modern hotel." (Second Am. Complaint at ¶ 41(c).) Amex's contention is that this language indicates that the Abramson's were already booked at the Jamaica Ritz when they contacted Amex. In addition, Amex contends that there is no indication that Amex actually served as the Abramsons' agent in booking the accommodations in question. However, a fair reading of paragraphs 16-19 and 41(c) is that Amex served as booking agent for the Ambramsons for the travel at issue. The Abramson's contacted Amex with the purpose of planning a trip. They specifically requested a certain type of hotel and Amex made a representation that the Jamaica Ritz was such a hotel. The Abramsons relied on this representation and were hotel guests at the Jamaica Ritz. The reasonable inference is that the Abramsons booked their accommodations through Amex, the travel agent they sought out to plan the accommodations. Thus, the Second Amended Complaint sufficiently pleads facts for the Court to infer that Amex owed the Abramsons some duty of care commensurate with its role as travel agent for the transaction at issue.

### B. The Extent of the Duty Owed by a Travel Agent to a Customer

Amex argues that even if it owed some duty to the Abramsons, Plaintiff fails to allege sufficient facts to warrant the imposition of liability on Amex for Mr. Abramson's death. Amex asserts that a travel agent only has a duty to warn customers if the agent has actual knowledge that the hotel would be unsafe.

The general relationship between travel agents and customers is understood in

the context of agency principles, as defined in the Restatement (Second) of Agency § 379(1) (1958):

> Unless otherwise agreed, a paid agent is subject to a duty to the principal to act with standard care and with the skill which is standard in the locality for the kind of work which he is employed to perform and, in addition, to exercise any special skill that he has.

However, the contours of this duty has been interpreted narrowly in the context of travel agents. Courts have stressed that the travel agent "is not an insurer, nor can he be reasonably expected to divine and forewarn of an innumerable litany of tragedies and dangers inherent in foreign travel." Schwartz v. Hilton Hotels Corp., 639 F. Supp. 2d 467, 474 (D.N.J. 2009) (quoting Rookard v. Mexicoach, 680 F.2d 1257, 1263 (9th Cir. 1982). The general rule is that a travel agent owes no duty to warn of or protect against every potential incident that may occur on the trips it books and is not generally liable for the negligence of third party hotel operators. See id.[4] Beyond this generally accepted principle, courts have taken varying approaches to the imposition of travel agent

---

[4] See also Hofer v. Gap, Inc., 516 F.Supp. 2d 161, 176 (D. Mass. 2007) (noting that "travel agents are not generally liable for the negligence or dangerous conditions of third-party hotel or travel operators"); Heidle v. Interval Intern. U.S.A. Corp., No. 01-0663E, 2003 WL 22383568, at *2 (W.D.N.Y. Sept. 9, 2003) (noting that the travel agent is not obligated to investigate the safety of accommodations because "a travel agent is not an insurer or guarantor of a customer's safety"); Gabrielle v. Allegro Resorts Hotels, 210 F. Supp. 2d 62, 69 (D.R.I. 2002) (noting that travel agents and tour operators are not liable for the negligence of third parties); Carley v. Theater Development Fund, 22 F. Supp. 2d 224, 228 (S.D.N.Y. 1998) (noting that "sponsors and operators of international tours do not have a duty to tour participants to insure the non-negligent performance of hotel services by independent contractors"); Lachina v. Pacific Best Tour, Inc., No. 93-6193, 1996 WL 51193, at *1 (S.D.N.Y. Feb. 7, 1996); McAleer v. Smith, 860 F. Supp. 924, 931 (D.R.I. 1994) aff'd in part 57 F.3d 109 (1st Cir. 1995) (noting that courts have generally declined to impose liability on travel agents for injuries sustained by customers at booked hotels because of the lack of a relationship "which would give rise to a duty on the part of the travel agent to investigate the safety of instrumentalities over which it had no control or knowledge").

liability. See id. at 474 n.9 (considering the law of travel agent liability across jurisdictions). New Jersey courts impose a duty upon travel agents to exercise "good faith and reasonable skill, care and diligence in the execution of the commission." Id. at 474 (quoting Rodriguez, 523 A.2d at 283).

A travel agent must disclose safety information that is germane to the customer's specific travel arrangements and known to the agent when discharging its duty of reasonable care. See Josephs v. Fuller, 451 A.2d 203, 205 (N.J. Super. Ct. Law Div. 1982) (noting that "had the travel agent . . . known of similar instances of assault or harassment by the hotel in question, he would be responsible for the damages sustained"). However, New Jersey courts have refused to extend this limited duty to a general duty to warn customers of general safety concerns. Plinio v. American Aruba Beach Resort & Casino, No. 98-2745, 1998 WL 1286233, at *2 (D.N.J. Nov. 4, 1998). Simply stated: "New Jersey courts would not impose a duty upon travel agents to warn of specific dangers that are unknown and inherent in the destinations to which his or her principals frequent." Schwartz, 638 F. Supp. 2d at 474. Thus, when a plaintiff seeks to hold a travel agent liable for negligently selecting a hotel without warning the plaintiff of specific, known dangers, the plaintiff must generally allege that the provider "specifically received complaints from other tour participants about the accommodations at the hotel, failed to make specific inquiries into the complaints and, despite such complaints, continued to recommend the hotel to future tour participants." Plinio, 1998 WL 1286233, at *2.

In addition to warning customers of specific, known dangers, New Jersey courts also impose a duty on travel agents to warn customers of those dangers of which the

agent should be aware in the exercise of due care.  See Schwartz, 638 F. Supp. 2d at 474; Rodriguez, 523 A.2d at 229.  The justification for this duty of awareness has been described as follows: "A travel agent holds himself out as having some expertise, and a traveler should be able to rely on that expertise. It would seem that a travel agent who makes arrangements for a vacation not knowing anything about the accommodations, has acted negligently." Josephs v. Fuller, 451 A.2d at 205.  The Josephs court recognized the general rule that a travel agent is not a guarantor of the traveler's safe trip and found that the agent lacked actual knowledge of the hotel's "primitive" accommodations, but emphasized that it would seem absurd to relieve the defendant of a duty to acquire *any* knowledge of the accommodations it was booking.  Id. at 205 (emphasis added).  The court concluded that "that when a traveler relies on the recommendations of a travel agent and suffers damage because of accommodations *so totally unacceptable* that any reasonable travel agent would have known not to make such recommendations, the travel agent is liable." Id. (emphasis added).  Thus, when a travel agent makes representations as to the quality of accommodations arranged for the customer, liability will be imposed only "if the arrangements fail in a manner which the travel agent should have foreseen but didn't as a result of his or her failure to exercise the requisite skill or diligence." Rodriguez, 523 A.2d at 229.

      Here, Plaintiff does not allege that Amex had actual knowledge of deficiencies with the Jamaica Ritz's medical equipment and services.  Rather, Plaintiff seeks to establish liability on what it contends Amex should have known.  The Abramsons alerted Amex to their needs.  Amex represented to the Abramsons that the Jamaica Ritz possessed all necessary state of the art medical equipment and services; a representation

that arguably proved false.  Plaintiff contends that this well-settled principle that a travel agent is not an insurer against unforeseeable risks is inapplicable here.  The Abramsons made a specific request for a hotel with state of the art medical equipment.  Plaintiff argues that the harm that befell Mr. Abramson was exactly the type of harm that Amex should have foreseen, but did not, as a result of its failure to investigate and follow up with the Jamaica Ritz.

As a travel agent, Amex owed the Abramsons a duty to exercise its commission in good faith with the reasonable skill, care and diligence commensurate with the profession.  A reasonable travel agent would acquire some basic knowledge as to the quality of accommodations it books.  However, if the Court was to accept Plaintiff's argument that the Abramson's generalized request for a hotel with all of the necessary state of the art medical services and equipment imposed a duty on Amex to specifically investigate the operational condition of the hotel's defribilator and the hotel staff's ability to administer appropriate emergency response techniques, the Court would be elevating Amex's status from that of a travel agent to an insurer.  A travel agent cannot reasonably be expected to investigate the current state of operation of each medical device housed at each of its offered travel destinations and to test the state of hotel employees' emergency response proficiency.  Thus, even if the Court accepts as true that Amex did not investigate or follow up on the Abramsons' generalized concerns, this failure would not be dispositive of liability.  The critical question in determining the scope of Amex's duty remains whether it discharged its commission with the reasonable care dictated under the circumstances.

The Court does not discount entirely the Abramson's request for a hotel with

state of the art medical facilities.  Amex was required to address the Abramsons' concern with due care.  However, the degree of care owed turns directly on the foreseeability of the harm sought to be avoided.  See Schwartz, 638 F. Supp. 2d at 474 (noting that the foreseeability of harm is a crucial element in determining whether the imposition of a duty is appropriate); see also Carvalho ex rel Carvalho v. Toll Bros. & Developers, 675 A.2d 209 (N.J. 1996); Carter Lincoln-Mercury, Inc. V. EMAR Group, Inc., 638 A.2d 1288 (N.J. 1994).   The Abramsons were booking for accommodations in a hotel, not a hospital.  Amex's representation that the Ritz-Carlton in Jamaica "provided all of the necessary state of the art medical services and equipment" cannot be reasonably interpreted to warrant or insure that the Abramsons would receive the type of medical care that would be expected in a hospital in the United States.  The Jamaica Ritz had a defribilator on site and was accessible to EMS services that could transport hotel guests in need of medical attention to a local hospital with more specialized medical equipment.  However, due to the alleged negligence of hotel staff, these services proved ultimately deficient in Mr. Abramson's case.  The facts as alleged fail to establish the primitive accommodations that the court found so totally unacceptable in Josephs.  This is not a case where Amex should have foreseen but didn't as a result of its failure to exercise the requisite skill or diligence.  Rather, Plaintiff has merely pled facts alleging negligence on behalf of the Jamaica Ritz in maintaining proper medical equipment and services.  And as a travel agent, Amex was not the insurer of harm that might occur as a result of the hotel's negligence.

## Conclusion

Taking all of the alleged facts as true, Plaintiff failed to plead that Amex breached its duty of reasonable care to the Abramsons.  Plaintiff's complaint sufficiently establishes that Amex owed the Abramson's a duty commensurate with that of a travel agent.  However, Plaintiff has failed to plead, despite the Abramson's general request for a hotel with state of the art medical services and equipment, that the condition of the Jamaica Ritz's medical equipment and services was so unacceptable that a reasonable travel agent would have foreseen the harm that resulted.  Therefore, Plaintiff has not stated a claim upon which relief can be granted against Amex in Count Two.  Plaintiff's remaining claims against Amex for Negligent Infliction of Emotional Distress (Count Three), Wilful Wanton Conduct - Punitive Damages (Count Four), Survival (Count Five), Wrongful Death (Count Six), and Loss of Consortium (Count Seven) are dependent upon the viability of the negligence cause of action and fail to state a claim as a result.  Defendant Amex's Motion to Dismiss will be granted.  An appropriate Order shall follow.


Dated: October 6, 2010

                                          /s/ Joseph H. Rodriguez
                                         Hon. Joseph H. Rodriguez,
                                         United States District Judge