<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
Z. MARCIA ABRAMSON, Executrix of The      :
ESTATE OF MARTIN ABRAMSON Deceased      **Hon. Joseph H. Rodriguez**
and Z. MARCIA ABRAMSON In her own right, :

                                                                                          **Civil Action No. 09-3264**

        Plaintiffs,                                :
  v.

                                                                                       :        **OPINION**

THE RITZ-CARLTON HOTEL
COMPANY, LLC t/a, d/b/a and a/k/a       :
THE RITZ-CARLTON GOLF & SPA
RESORT, ROSE HALL, JAMAICA              :
        and
MARRIOTT INTERNATIONAL, INC.            :
        and
THE RITZ CARLTON GOLF & SPA             :
RESORT, ROSE HALL, JAMAICA
        and                             :
AMERICAN EXPRESS TRAVEL RELATED
SERVICES, INC.,                         :
        and
JOHN DOES 1 through 20,                 :

        Defendants.                     :
_____

**RODRIGUEZ, J.**

      This matter comes before the Court on motion [Dkt. No. 51] of The Ritz-Carlton Hotel Company, LLC; Marriott International, Inc.; The Ritz-Carlton Hotel Company of Jamaica, Ltd.; and Rose Hall Resort, L.P. ("Defendants") for summary judgment on all claims filed by Z. Marcia Abramson ("Plaintiff"), as executrix of the estate of Martin Abramson ("Abramson") and in her own right. The Court has considered the written submissions of the parties without oral argument pursuant to Fed. R. Civ. P. 78. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the reasons expressed below, Defendants' motion will be granted.

## I. Background

On June 8, 2007, Abramson was eating dinner with his wife and family in the Jasmine restaurant at the Ritz Carlton Hotel & Spa in Rose Hall, Jamaica. During dinner, between the hours of 8:00 and 9:00 p.m., Abramson went into cardiac arrest.[1] Plaintiff, a registered nurse who was trained and certified in cardiopulmonary resuscitation ("CPR") called out for help and went to her husband's aid. Two other patrons, a nurse-anesthetist and a physician, both with Basic Life Support ("BLS") training quickly responded to Plaintiff's calls for help. The three immediately began to perform CPR on Abramson.

In response to Plaintiff's calls for help, a restaurant waitress immediately notified the hotel receptionist and called the hotel's emergency hotline to report a medical emergency in the restaurant. At 9:05 p.m., the hotel's Command Control Coordinator sent a radio dispatch to the hotel's Loss Prevention Officers (LPOs) to respond to the restaurant. At 9:07 p.m., the Command Control Coordinator contacted MoBay Medical Clinic, instructed them to send an ambulance, and gave directions as to how emergency personal should enter the hotel.[2]

---

[1] The exact time of Mr. Abramson's cardiac arrest is disputed by the parties. Plaintiff asserts that Mr. Abramson collapsed between 8:00 and 8:30 (Pl. SOF ¶ 2.) Defendants assert that Mr. Abramson suffered a heart attack between 8:45 and 9:00 p.m. (Def. SOF ¶ 2.)

[2] Plaintiff admits that hotel staff immediately notified the hotel's emergency line after hearing Mrs. Abramson's cries for help at 9:05 p.m. (Pl. SOF ¶¶ 18-19) and that an ambulance was called approximately two minutes later at 9:07 (Id., ¶ 20). This concession seriously undermines Plaintiff's contention that Mr. Abramson's cardiac arrest occurred between 8:00 and 8:30 and that Mrs. Abramson immediately notified hotel staff of the emergency. (Id., ¶¶ 2, 17)

Shortly thereafter, hotel LPOs arrived at the restaurant with an oxygen tank and automatic external defibrillator. Plaintiff contends that the oxygen tank was empty and the defibrillator only produced a "faint like quiver" when applied to Abramson.[3] However, Plaintiff concedes that Abramson received constant BLS support until the ambulance arrived at approximately 9:19 p.m. and transported him to MoBay Medical Clinic. Abramson was subsequently airlifted to Jackson Medical Center in Miami, Florida where he was pronounced dead on June 11, 2007.

On June 5, 2009, Plaintiff filed a lawsuit in New Jersey Superior Court as the executrix Abramson's estate and in her own right, naming as defendants the purported owners and operators of the hotel. The action was properly removed to this Court on June 6, 2009 [Dkt. No. 1]. Plaintiff subsequently filed a First Amended Complaint on February 5, 2010 [Dkt. No. 24], and a Second Amended Complaint on March 15, 2010 [Dkt. No. 38], properly identifying and clarifying the ownership and operator entities associated with the hotel. Plaintiff predicates liability on the grounds that Defendants breached a duty of care to Abramson and, as a result, substantially increased his risk of death. Plaintiff asserts claims for negligence (Count One), punitive damages (Count Four), survival (Count Five), and wrongful death (Count Six) on behalf of Abramson's estate and claims for negligent infliction of emotional distress (Count Three) and loss of consortium (Count Seven) on her own behalf. Defendants now move for summary

---

[3] There is a genuine issue of material fact as to the operating condition of the oxygen and defibrillator. Defendants claim that the oxygen tank was not empty and that the defibrillator was sufficiently charged when used on Abramson. (Def. Counter SOF ¶¶ 8-9). However, for the purpose of deciding this motion, the Court assumes, as Plaintiff contends, that the equipment was not operational.

3

judgment as to all claims on the grounds that Plaintiff has not demonstrated that Defendants breached any duty of care to Abramson. [Dkt. No. 51].[4]

## II.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the movant has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant satisfies its burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

---

[4] Plaintiff filed an opposition to the motion [Dkt. No. 52], and Defendants filed a reply [Dkt. No. 55].  Plaintiff also filed a letter, purporting to be a Sur-Reply letter brief in response to Defendant's Reply [Dkt. No. 57].  No sur-replies are permitted without permission of the Court.  Local Civ. Rule 7.1(d)(6).  Plaintiff did not seek nor did the Court grant permission for Plaintiff's filing.  However, the Court has broad discretion to consider supplemental briefing as appropriate and fair.  See Fenza's Auto, Inc. v. Montagnaro's, Inc., No. 10-3336, 2011 WL 1098993, at *4 (D.N.J. March 21, 2011). Thus, the Court will consider Plaintiff's sur-reply only to the limited extent that it clarifies and narrows the theory of liability advanced.  See id.

declarations, stipulations . . . admissions, interrogatory answers, or other materials" that establish the absence of a present dispute. Fed. R. Civ. P. 56(c)(1)(A).

Once the moving party has met this burden, the nonmoving party must show, by affidavits or otherwise, the presence of a genuine dispute for trial. Celotex, 477 U.S. at 323; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994); accord Fed. R. Civ. P. 56(c)(1). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). To survive a motion for summary judgment, a non-movant must present more than a mere "scintilla of evidence" in his favor. Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir.2001).

Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the

province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.  Discussion

Defendants move for summary judgment on the grounds that they did not breach a duty of care owed to Abramson.[5]  Defendants first argue that it discharged its limited duty to summon medical assistance.  Next, Defendants argue that to the extent it assumed a duty by providing Abramson with medical equipment, it is immunized from liability arising out of those actions by New Jersey's Good Samaritan Act.

**A.  A Hotel's Duty to Injured Patrons**

As a prerequisite to recovery under a negligence theory, a plaintiff must demonstrate that the defendant breached a duty of reasonable care owed to the plaintiff. Jerista v. Murray, 883 A.2d 350, 360 (N.J. 2005).  The question of whether a duty exists is a matter of law that requires "a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Kelly v. Grinnell, 476 A.2d 1219, 544 (N.J. 1984).  Ultimately, the existence of a duty "is largely a question of fairness and policy." Stratchan v. John F. Kennedy Memorial Hosp., 538 A.2d 346, 349 (N.J. 1988).

---

[5] The parties agree that a choice of law analysis dictates that the present matter is controlled by New Jersey law.  Thus, the Court applies the substantive law of the State of New Jersey pursuant to the mandates of Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  "A federal court under Erie is bound to follow state law as announced by the highest state court." Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007). However, when no New Jersey court has answered the question, the court should look to the Third Circuit's prediction as to how the highest state court would rule.  See Rollick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir. 1991) (noting that "where applicable state precedent is . . . absent . . ., we must determine or predict how the highest state court would rule").

As a general rule, there is no duty to protect another person from harm or offer aid to an injured person. See Restatement (Second) of Torts ("Restatement"), § 314 (1965) . However, under New Jersey law, "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is in the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314, 316 (N.J. 2003). This duty of care flows from the notion that "business owners 'are in the best position to control the risk of harm.'" Hojnowski v. Vans Skate Park, 901 A.2d 381, 388 (N.J. 2006) (quoting Kuzmicz v. Ivy Hill Park Apts., Inc., 688 A.2d 1018, 1021 (N.J. 1997)). However, "an innkeeper is not an absolute insurer of the safety of its guests." Nebel v. Avichal Enterprises, Inc., 704 F.Supp. 570, 576 (D.N.J.1989) (citing Johnson v. Kolibas, 182 A.2d 157, 161 (N.J. Super. Ct. App. Div. 1962). No New Jersey court has addressed whether the general duty to provide reasonable care requires a hotel to provide emergency medical assistance to its patrons. However, the Third Circuit has predicted that the New Jersey Supreme Court would not impose a duty on a hotel to provide medical services to an injured patron. See Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173 (3d Cir. 1994).

In Lundy, the plaintiff, Lundy, suffered a cardiac arrest and fell to the ground unconscious while gambling in the defendant's casino-resort, TropWorld. Id. at 1175 Three other patrons, including a nurse and doctor, immediately assisted Lundy while TropWorld security personnel summoned an ambulance. Id. at 1175-76. TropWorld had an in-house medical station equipped with an on-call nurse and medical equipment for the benefit of employees and patrons who became injured or sick on the premises. Id. The on-call nurse immediately assisted Lundy with oxygen and other life-saving

equipment. However, the nurse did not have the equipment or qualifications required to perform an intubation, which was a necessary procedure for Lundy. Id. Lundy subsequently filed a negligence action against TropWorld, claiming that it breached a duty to provide satisfactory medical aid to its patrons. Id. The district court granted TropWorld's motion for summary judgment and the Third Circuit affirmed.

The Third Circuit reasoned that a hotel has no greater duty to its patrons than an employer owes its employees while they are engaged in the employer's business. Id. at 1178. Under New Jersey law:

> There rests no duty upon an employer to provide medical service or other means of cure to an ill, diseased or injured employee . . . . However, if the employee while engaged in the work of his or her employer, sustains an injury rendering him or her helpless to provide for his or her own care, the employer must secure medical care for the employee.

Id. (citing Szabo v. Pennsylvania R.R. Co., 40 A.2d 562 (N.J. Err. & App. 1945). Therefore, the court opined that, under New Jersey law, a hotel has no duty to provide medical service and only a limited duty to secure medical care for a patron who is rendered helpless. Id. at 1178-79. No duty arises if the patron is accompanied by friends and family who could summon medical assistance if necessary. See Jarrah v. Trump Hotels & Casino Resorts, Inc., 487 F.Supp.2d 522, 527 (D.N.J. 2007); Kim v. Marina Dist. Dev. Co. LLC, No. 09-1553, 2010 WL 2877784, at *4 (D.N.J. July 16, 2010).

**B. The Good Samaritan Act**

At common law, those with no pre-existing duty to act may nevertheless be liable if they undertake to provide emergency service and fail to exercise the ordinary level of care. See Podias v. Mairs, 926 A.2d 859, 864 (N.J. Super. Ct. App. Div. 2007) (citing Restatement, §§ 314, 324). However, in New Jersey, this common law rule has been

8

abrogated by the Good Samaritan Act, N.J. Stat. Ann. 2A:62A-1. Id. The Good Samaritan Act provides in pertinent part that "[a]ny individual … who in good faith renders emergency care at the scene of an accident or emergency to the victim or victims thereof, shall not be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care." N.J. Stat. Ann. § 2A:62A-1.[6] The purpose of the Act is "to encourage the rendering of medical care to those who need it, but who otherwise might not receive it, by persons who come upon such victims 'by chance, without the accoutrements provided in a medical facility, including expertise, assistance, sanitation or equipment.'" Marry v. Plainfield Rescue Squad, 15 A.3d 30, 38-39 (N.J. Super. Ct. App. Div. 2011) (citing Velazquez ex rel. Velazquez v. Jiminez, 798 A.2d 51, 57 (N.J. 2002). Therefore, those who offer gratuitous assistance with no legal obligation to do so are immunized from tort liability. Podias, 926 A.2d at 866-67. However, under the "pre-existing duty" exception, the Good Samaritan Act will not shield a volunteer from liability if the duty allegedly breached existed prior to the voluntary assistance. See, e.g., Lundy, 34 F.3d at 1180; Murray, 15 A.3d at 39.

**C. Analysis**

Plaintiff does not meaningfully advance an argument that Defendants failed to discharge the limited duty to summon aid for a helpless patron recognized in Lundy.

---

[6]Further, the Act provides specifically that "[a]ny person or entity who, in good faith, acquires or provides a defibrillator, renders emergency care or treatment by the use of a defibrillator or supervises such care or treatment and, who has complied with the requirements of this act, shall be immune from civil liability for any personal injury as a result of such care or treatment, or as a result of any acts or omissions by the person or entity in providing, rendering or supervising the emergency care or treatment." N.J. Stat. Ann. 2A:62A-27(a).

Rather, Plaintiff seeks to predicate liability on the fact that the medical equipment that was gratuitously provided by the hotel was negligently maintained. Plaintiff asserts that "the Third Circuit and the federal district courts of New Jersey have yet to address the precise issue of what duty is owed to a patron when a hotel decides to undertake to provide medical services to any patron in the event they become sick or injured." (Opp. Br., p. 17.) According to Plaintiff, "[b]y undertaking to maintain medical equipment on site in the event of an emergency involving its patrons, Defendants created a duty to ensure that the medical equipment was in working condition in an emergency." (Id., pp. 18-19.) Plaintiff argues that because Defendants voluntarily assumed this duty prior to Mr. Abramson's emergency, the Good Samaritan Act is inapplicable due to the pre-existing duty exception.[7] (Id.)

The court in <u>Lundy</u> explicitly addressed and discounted the argument proposed by Plaintiff in this case. See <u>Lundy</u>, 34 F.3d at 1180-81. First, the court rejected the plaintiff's claim that, by having medical personnel on staff, the defendant casino voluntarily assumed a duty that it would not otherwise have had. <u>Id.</u> at 1180. The court reasoned that the principles of common law liability predicated on voluntary undertakings set forth in the Restatement have been materially altered as a result of the Good Samaritan Act. <u>Id.</u> The court continued: "We do not believe the preexisting duty

---

[7] Plaintiff concedes that hotel staff did not negligently operate the medical equipment or render negligent assistance to Mr. Abramson. Plaintiff's Sur-reply clarifies the theory of liability as follows: "Plaintiff alleges that Defendants were negligent by failing to properly maintain the medical equipment on its site that Defendants were soley responsible to maintain, not that Defendants or anyone on their behalf negligently operated the oxygen tank and defibrillator when treating Mr. Abramson." [Dkt. No. 56].

10

exception is applicable under New Jersey law in a situation . . . where the preexisting duty is a limited one and the alleged negligence is the failure to provide a level of assistance beyond that required by the preexisting duty." Id. Turning to the argument advanced by Plaintiff here, that a new duty arose from the gratuitous undertaking to maintain medical equipment on site, the court stated:

> At times, the Lundys appear to be arguing that TropWorld, by putting intubation equipment on its premises, voluntarily assumed a duty beyond its preexisting duty to take reasonable first aid measures and that TropWorld is, accordingly, liable for a breach of that voluntary assumed duty. If the Lundys do so argue, we believe . . . the Good Samaritan Act would protect TropWorld from liability arising from its voluntary activity.

Id. at 1181 n.11.

The undisputed facts demonstrate that Abramson was constantly surrounded by family and trained medical professionals who provided assistance. Even if Abramson could be considered helpless, triggering a duty to secure medical care, that duty was discharged when outside medical assistance was summoned. Defendants were not required to provide, or to be prepared to provide, all medical care that it could reasonably foresee might be needed by a patron. See Id. at 1179. Therefore, Defendants did not have a duty to have oxygen or a defibrillator on its premises, or to make the equipment available to Abramson. See Id. To the extent that Defendants endeavored to provide this equipment in response to Abramson's emergency, this voluntary act is immunized by the Good Samaritan Act. See Id. at 1181 n.11. Imposing liability under these facts would only discourage hotel's from acquiring life-saving equipment it is not legally obligated to have at hand. Plaintiff has failed to demonstrate that Defendants breached a duty of care to Abramson. Therefore, Plaintiff's negligence claim against

Defendants will be dismissed.

Plaintiff's claims for punitive damages, survivorship, wrongful death, negligent infliction of emotional distress and loss of consortium are all derivative of the underlying negligence claim.  Because the negligence claim will be dismissed, Plaintiff's derivative claims will also be dismissed.  An appropriate Order shall follow.


Dated: May 31, 2011

                                              /s/ Joseph H. Rodriguez
                                             Hon. Joseph H. Rodriguez,
                                             United States District Judge